CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY

V.

CITY OF CHICAGO.

*Municipal Corporations—Ordinance—Construction — Railroads — Permission to Lay Tracks—Viaduct—Injury to Private Property—Evidence —Damages.*

1. The history of city council proceedings pending the consideration of an ordinance which is but a proposition, and is of no effect unless accepted by the party to whom it is made, can not be used to give force or meaning to the contract so made.

2. In an action brought by a municipality to recover from a railroad company the amount of a judgment recovered against it by a property owner injured through the construction of a viaduct by said company, the right to lay certain tracks having been granted it upon the understanding that it should pay the cost and expense of the viaduct in question and legal· damages resulting, this court declines to interfere with the judgment for the plaintiff.

[Opinion filed December 24, 1889.]

APPEAL from the Circuit Court of Cook County; the Hon. ARBA N. WATERMAN, Judge, presiding.

Messrs. DEXTER, HERRICK & ALLEN, for appellant.

Mr. FRANCIS ADAMS, for appellee.

MORAN, J.   This case was tried before the Circuit Court without a jury, and the judgment appealed from rendered against appellant.   We have read the arguments of counsel presented in the briefs filed herein, and given them, as well as the facts in the record, full consideration, and as a result we are inclined to concur with Judge Waterman in the conclusion which he reached on the trial below, and we therefore affirm the judgment on the following opinion rendered by him, which has been printed in the brief of counsel, and which disposes, in a manner satisfactory to this court, of all material questions in this case.

### OPINION OF CIRCUIT COURT.

"This is an action to recover the amount of a judgment obtained by Nathan Mears against the city for damages caused by the construction of Polk street viaduct.

On the 20th of December, 1880, an ordinance was passed by the city council giving to the defendant permission to lay down and maintain certain railroad tracks upon specific conditions.   The permission is granted to a special person to do that which but for the ordinance it could not do; this special permit is given upon certain conditions.   The ordinance is not one of a general nature, by which all persons are permitted to do or forbidden to do; only the Chicago, Burlington & Quincy Railroad Company could exercise the permit, and it had the option to accept or reject the offer made to it.   By its acceptance a contract was made by which the city gave a license, and the company agreed to do various things by way of payment therefor.

First, the company agreed to pay, or cause to be paid, to the city of Chicago, the cost and expense of constructing a new

viaduct on Polk street over the railroad tracks crossing said street, between Canal street and Polk street bridge, together with all proper lateral and other necessary approaches thereto, and to maintain and keep the same in repair, without expense and cost to the city of Chicago.

Section 4 of the ordinance is as follows:

' The permission and authority hereby granted are upon the further express condition that the said railroad company shall and will forever indemnify and save harmless the city of Chicago against and from any and all legal damages, judgments, decrees and costs, and expenses of the same, which it may suffer or which may be recovered and obtained against said city, for or by reason of the granting of such privileges and authority, or for or by reason of, or growing out of, or resulting from the passage of this ordinance, or any matter or thing connected therewith, or with the exercise by said company of the privileges hereby granted, or from any act or acts of said company under or by virtue of the provisions of this ordinance.'

It is for the purpose of this suit established that Nathan Mears suffered damages by the construction of the Polk street viaduct, and that in consequence thereof he obtained a judgment against the city; but was the construction of the viaduct a thing which grew out of or resulted from the passage of the ordinance, or was the construction a matter or thing connected with the passage of the ordinance or with the exercise by the company of the privileges granted to it, or with any act or acts of the company, under or by virtue of the provisions of the ordinance?

It is said that as the ordinance does not direct the building of the viaduct, and its construction was not ordered by the city for some months after the passage of this ordinance, that its construction grew out of the subsequent action of the city; that notwithstanding the passage of this ordinance, the city might never have ordered that the viaduct be built; that therefore the most that the defendant undertook to do was to pay the cost of the viaduct whenever the city ordered it built, and to keep it in repair after it was built; that what

grew out of or resulted from the passage of the ordinance, or is connected therewith, was what was therein provided should be or might be, or what has been done by virtue of the authority granted by the ordinance; that the ordinance gave no permission to this company or anybody else to construct this viaduct; and there never was any such permission or authority until some time in the year 1881, and consequently that the company did not build the viaduct by virtue of this ordinance, and as regards the viaduct, has done and could do nothing whatever by virtue of this ordinance.

It is manifest that when this ordinance was passed and accepted, the construction of Polk street viaduct was contemplated by both the city and the company; the company must, when it made this contract, have considered that the building of this viaduct would result from, or grow out of, the passage of this ordinance, in which it expressly agreed to pay the entire cost and expense of construction; and if the building of this viaduct, which, so far as consideration to the city is concerned, is the principal thing spoken of in the agreement, is not connected with the passage of the ordinance, it would be difficult to say what is. It is true that there is not, in the ordinance, an order or agreement that the viaduct shall be built, neither is there an order or agreement that any railroad tracks shall be laid, or any train run thereon.

For aught that appears, the decision of the company to lay tracks and run trains may have been made long after the passage of this ordinance, but whenever made, the city could not say that the laying of the tracks and the running of the trains neither resulted from, or were in any way connected with, the passage of this ordinance.

By this ordinance the city granted to the defendant valuable rights and privileges, and as a consideration for this the company among other things, promised to pay all the cost and expense of constructing Polk street viaduct. For all that, in accepting this ordinance, the defendant promised to do, it received a consideration satisfactory to it; so far as its undertaking is concerned, its obligation is no different from what it

would be, if, instead of receiving valuable rights and privileges, it had been paid by the city a large sum of money.

If the city had made an agreement by virtue of which it paid to the defendant $100,000, and the defendant, on its part, agreed to pay the cost and expense of constructing this viaduct, whenever called upon so to do, could it be contended, after the viaduct had, in accordance with the terms of such contract, been constructed and paid for, that its construction did not grow out of, or result from the making of such agreement, or from any matter or thing connected therewith ?

Could any man, having been paid for building for another a house, thereafter claim that such building neither grew out of, or resulted from, such payment, nor was it a matter or thing connected with such payment? Would not the question be asked of him, 'If the building was not connected with the payment, with what was it connected?'

In the present case it appears that the city in passing this ordinance and thereby granting to the defendant valuable rights and privileges, paid it for constructing this viaduct just as completely as if it had given it a sum of money for such purpose; and having so done, and the defendant having itself constructed the viaduct as the city permitted it to do, it seems to me clear that the agreement and payment are things connected directly with the passage of the ordinance.

By accepting this ordinance the company made an agreement which, whether wise or unwise, burdensome or trivial, it must perform; and therefore leave out of consideration the question as to what its obligations in respect to viaducts hereafter ordered may be.

The proceedings of the common council in respect to this matter have been offered in evidence, and it is argued that they show it was not the intention of the council to impose upon the defendant such an obligation as is sought to be enforced in this case.

It is fair to presume that each party to the contract was endeavoring to make the best bargain it could. The persons representing the defendant doubtless consulted among themselves as to the agreement it should enter into and the language

to be used in expressing it; but it is manifest that what such persons said among themselves could not, if known, be used to put an interpretation upon the contract made with the city. What are the council proceedings but the talking and planning of the representatives of the city among themselves as to what proposition it would make to the Chicago, Burlington & Quincy Railroad?

I am aware of no case in which council proceedings had, under similar circumstances, been used to interpret the terms of a contract.

Endlich, in his work on the construction of statutes, says that the parliamentary history of an enactment is inadmissible to explain its meaning, and the same opinion is expressed in Attorney-General v. Sillem, 2 Exchequer Repts. 52.

At all events it appears to me clear that the history of council proceedings pending the consideration of an ordinance, which is but a proposition, and is of no effect unless accepted by the party to whom it is made, can not be used to give force or meaning to the contract so made.   I am, for these reasons, of opinion that the defendant is liable in this action, and the issues are found for the plaintiff."

*Judgment affirmed.*